IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH WASHINGTON            :              CIVIL ACTION
                              :
        v.                    :
                              :
CITY OF PHILADELPHIA, et al.  :              NO. 11-3275

MEMORANDUM

Dalzell, J.                                  January 11, 2011

        Plaintiff Kenneth Washington's complaint[1] alleges

Fourth Amendment and substantive due process violations under 28

U.S.C. § 1983 against: (1) the City of Philadelphia (the "City"),

(2) Warrant Unit Officer Brent Donahue, Badge # 332, (3) John

Does I-III (Warrant Unit Officers), John Doe IV (a Warrant Unit

Sergeant), John Doe V (a Warrant Unit Lieutenant), and (4) John

Doe VI (a City Police Sergeant), and John Doe VII (a City Police

Captain), and (5) John Does VIII-X (an array of City Police

Officers of the Seventeenth Police District).  John Does I-III

and VIII-X will be referred to collectively as the "defendant

officers."  Plaintiff also alleges state law claims of assault

---

        [1] Several anomalies in plaintiff's complaint lead us to
wonder whether it was written for this case or was the product of
a key punched from counsel's word processing form.  See, e.g.,
Pl.'s Compl. ¶ 55 ("Plaintiff's substantive due process rights
protected under the Fourteenth Amendment were violated and she
suffered grievous bodily injury") (emphasis added); Count V
heading (naming "Reyes" as a defendant, though no Reyes is
mentioned elsewhere in the complaint) id..

and battery and false imprisonment against a group we will construe to include the defendant officers.

The City, the only defendant timely served in this action,[2] has filed this motion to dismiss the claims plaintiff has asserted against it.  These claims are limited to Count I's excessive force and unlawful seizure claim, Count II's substantive due process claim, and Count III's municipal liability claims.  For the reasons set forth below, we will grant the City's motion to dismiss the municipal liability claims in Count III.  Thus, in the absence of any basis for municipal liability, we will dismiss Count I against the City.  Nevertheless, we are obliged to grant plaintiff leave to amend his complaint on Counts I and III only.  Lastly, we will dismiss

---

[2]   Officer Donahue, the only other specifically identified defendant, was not served until early December of 2011.  We do not reach plaintiff's claims against him here.  We also do not reach the claims asserted against the John Doe officer defendants.  However, since more than 120 days have elapsed since plaintiff filed his complaint, we will order plaintiff to show good cause for his failure to substitute the John Doe defendants' true identities.  His failure to show good cause would oblige us to dismiss without prejudice his claims against these defendant officers pursuant to Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against the defendant or order that service be made within a specified time.").

Count II of the complaint in its entirety under the Supreme Court's "more-specific-provision" rule.

## I.   Factual Background

When we consider a motion to dismiss under Rule 12(b)(6), we must "'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.'" Ordonez v. Yost, 289 F. App'x 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  In the course of our inquiry, we may "'consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,'" Brown v. Daniels, 128 F. App'x 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).  A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis and internal quotation marks omitted).

Plaintiff claims that on May 28, 2009 he received a court paper directed to one of his neighbors.  Pl.'s Compl. ¶ 16. When plaintiff contacted the Warrant Unit, he was directed to

write "Person Doesn't Live Here" on the envelope.  Id. ¶ 17.

Early in the morning on June 5, 2009, plaintiff was in his home

when "[s]uddenly, and without warning" the defendant officers

came to his residence looking for that neighbor.  When plaintiff

advised the defendant officers that the subject of their search

did not live at his home, they became "verbally abusive, cursing,

and hostile[.]"  Id. ¶¶ 19-21.  They advised plaintiff that they

were "'taking him in[,]'" allegedly without giving any reason.

Id. ¶ 22.  The defendant officers allegedly "threw Plaintiff onto

the floor of his home, kicked him, and stepped on his back while

he was handcuffed mocking him the entire time with comments such

as 'now look at you'".  Id. ¶ 24.  The officers then removed the

handcuffs and told plaintiff to sit down.  Id. ¶ 25.  Following

the incident, plaintiff claims to have called 911 twice and also

visited the emergency room.  Id. ¶ 26.  Plaintiff was not

arrested or cited for any crimes on June 5, 2009.  Id. ¶ 31.

Count III of plaintiff's complaint invokes three

different municipal liability theories.  First, plaintiff alleges

the City endorsed "policies, procedures, customs, and practices

of allowing its officers to use unreasonable and excessive force

thereby violating the civil rights of those with whom they come

into contact."  Id. ¶¶ 41, 63.  Second, plaintiff avers that "the

4

City and supervisory Defendants have, with deliberate indifference, failed to adequately train and supervise their officers concerning the proper provision of medical care to injured suspects, and the injuries to Plaintiff were caused by, and were a foreseeable consequence of, such failures." Id. ¶ 43. Plaintiff amplifies this by contending that the City failed to train its officers in the "proper methods for issuing a warrant, executing a warrant, investigating a warrant, and handling a warrant while preserving the constitutionally protected rights of individuals with whom they come into contact regardless of whether they are the subject of the warrant or not." Id. ¶ 44. Third, plaintiff alleges that the "City has maintained an inadequate system of review of instances of misconduct, abuse of police powers or violation of citizens' rights by police officer [sic], which system has failed to identify instances of abuse of police powers or violations of citizens' rights by police officers, or to discipline, more closely supervise, or retrain officers who abuse their police powers or violate citizens' rights, including the police officers named as parties herein." Id. ¶ 42.

Plaintiff asserts that these "acts, omissions, systemic deficiencies, practices, customs an [sic] deliberate indifferent

5

[<u>sic</u>] constitute the policies, practices and customs of the City and have caused officers of the City . . . to violate the constitutional rights of citizens, including Plaintiff." <u>Id.</u> ¶ 46. Paragraphs sixty through sixty-six rehearse these same allegations, incorporating by reference the "policies . . . more particularly set forth in the preceding paragraphs" and "more specifically described above[.]" <u>Id.</u> ¶¶ 63-64.

## II. <u>Analysis</u>

### A. <u>The City's Argument</u>

As an initial matter, the City's motion to dismiss does not challenge plaintiff's Fourth Amendment claim in Count I of the complaint. The City nevertheless argues that plaintiff's Fourteenth Amendment substantive due process claim (Count II) should be dismissed against <u>all</u> defendants because the argument is more properly analyzed under the Fourth Amendment. Def.'s Mot. Dismiss 7 (citing <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) and <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 602 (3d Cir. 2005)).

The City's motion at bottom asserts that plaintiff's municipal liability claims must fail under Rule 12(b)(6). As to

plaintiff's policy or custom argument, the City first contends

that the complaint contains

> nothing more than the most cursory assertions
> of any specific policies, customs, or
> instances of deliberate indifference of the
> Philadelphia Police Department, none of which
> are supported by any of Plaintiff's factual
> allegations, which consist only of a single
> and isolated incident of alleged police
> misconduct.  Indeed, Plaintiff takes a
> scattershot approach and appears to be
> launching a barrage of legal conclusions at
> the wall to see which ones will stick.

Def.'s Mot. Dismiss 5.

Second, the City focuses its attention on plaintiff's

failure to train claim.  The City cites the Supreme Court's

recent decision in <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 1359-61

(2011), and asserts that plaintiff has failed to plead any facts

that (1) allege a "pattern of similar violations" or (2) place

plaintiff's claim within the "narrow range of circumstances" that

allow a single violation to satisfy the deliberate indifference

standard.  Finally, the City attacks plaintiff's allegation that

"'the City has maintained an inadequate system of review[,]"

Def.'s Mot. Dismiss 5 (quoting Pl.'s Compl. ¶ 42), by labelling

it a "most cursory accusation[] of . . . [an] instance[] of

deliberate indifference[.]"  <u>Id.</u>

Overall, the City contends that plaintiff's "shotgun approach" is the "very epitome of '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that fail Rule 8's ordinary pleading requirement under Iqbal and Twombly.  Id. 6.

## B.   **Plaintiff's Argument**

Naturally, plaintiff opposes the City's arguments.[3]  He cites Daniels v. Williams, 474 U.S. 327, 331 (1986) and Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994), in support of his substantive due process claim's viability.  Plaintiff claims that the City "in citing a number of cases, argue[s] that no constitutional violation exists," Pl.'s Resp. 6-7, and contends that the City's argument is "simply not true."  Id. 6.

Plaintiff's response chiefly addresses the City's municipal liability arguments.  Plaintiff reprints verbatim paragraphs forty-two and sixty-two through sixty-four of his complaint, and incorporates by reference "the remainder of Plaintiff's Complaint, [and he asserts that] it is clear that

---

[3]   The last paragraph on page four of plaintiff's response to the City's motion to dismiss cites a string of cases from the Supreme Court and Second Circuit that pre-date Twombly and Iqbal -- some by as much as forty years.  Plaintiff fails to cite Iqbal even once.

[he] alleges that Defendant, City unconstitutionally implemented

and enforced a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by the officers of

the [City]." Id. 4-5 (citing Monell, not the complaint).  In

sum, plaintiff asserts that:

> [b]y alleging that Defendant City implemented
> a policy of excessive force and having their
> officers carry out that policy, Plaintiff has
> met the minimum pleading requirements
> pursuant to Rule 8 of the Federal Rules of
> Civil Procedure.  Clearly, Defendant, City
> has sufficient information to answer
> Plaintiff's Complaint based on the above
> mentioned [sic] averments.

Id. 5.


### C.   The Substantive Due Process Claim

The Supreme Court teaches that under the "more-

specific-provision" rule of Graham v. Connor, 490 U.S. 386

(1989), "'[w]here a particular Amendment provides an explicit

textual source of constitutional protection against a particular

sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide

for analyzing these claims.'"  County of Sacramento v. Lewis, 523

U.S. 833, 842 (1998) (quoting Albright, 510 U.S. at 273 (in turn

quoting Graham, 490 U.S. at 395)).

To begin, plaintiff mistakenly asserts that the City "argue[s] that no constitutional violation exists."  Pl.'s Resp. 6.  To the contrary, the City does not question the existence (or absence) of a Fourth Amendment violation.  Thus, we assume the existence of a Fourth Amendment violation for purposes of entertaining the municipal liability claims against the City.

Second, plaintiff misapprehends the issue raised here. The Supreme Court's jurisprudence teaches that where the "more-specific-provision" of the Constitution serves as the basis for a claim, courts must rely on <u>that</u> provision rather than on substantive due process.  Plaintiff here asserts a Fourth Amendment violation in Count I of his complaint, alleging excessive force and unlawful seizure of his person.  Pl.'s Compl. ¶¶ 24, 34, 48-53.  Thus, we will analyze his claim under the Fourth Amendment.

As Justice Souter explained in <u>Lewis</u>, "[s]ubstantive due process analysis is therefore inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment."  523 U.S. at 843-44 (holding that substantive due process analysis could proceed because no "search or seizure" occurred).  By plaintiff's own pleading, an allegedly unlawful search and seizure happened here.  The City does not at this juncture refute

10

this contention and so plaintiff's substantive due process claim must fail.[4]

For these same reasons, and in the interest of judicial economy, we will dismiss Count II's substantive due process claim against <u>all</u> defendants.  As plaintiff has had an opportunity to respond to the City's motion to dismiss that put plaintiff on notice of this argument, it would thus be futile to give plaintiff another opportunity to provide additional argument on this well-settled principle of law.

**D.   <u>The Municipal Liability Claim</u>**

**1.   <u>The Standard</u>**

---

[4] Plaintiff's reliance on <u>Fagan</u> misses a key point found within its own text:

> Since the Supreme Court's opinion in <u>Graham v. Connor</u> . . ., excessive force claims against the police are actionable under the Fourth Amendment rather than the substantive component of the Due Process Clause.  However, where the excessive force does not involve a "seizure" by law enforcement officials, courts have held that a "shocks the conscience" substantive due process claim survives <u>Graham</u>.

22 F.3d at 1305 n.5.

Though <u>Leatherman v. Tarrant County</u>, 507 U.S. 163 (1993), makes plain that § 1983 claims are not subject to a heightened pleading standard, <u>Iqbal</u>'s unambiguous extension of <u>Twombly</u> to "all civil actions" leaves the ordinary notice pleading requirement intact for those claims. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), leading a reviewing court to engage in a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense[,]" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).

Under this standard, a pleading may not simply offer "labels and conclusions," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Twombly</u>, 550 U.S. at 555. Ultimately, there must be "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 129 S. Ct. at 1949.

Essentially, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Phillips v. Cnty. of</u>

Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks

omitted).  But "the question presented by a motion to dismiss a

complaint for insufficient pleadings does not turn on the

[court's ability to] control[] . . . the discovery process."

Iqbal, 129 S.Ct. at 1953 (citing Twombly, 550 U.S. at 559).  And

"the defendant bears the burden of showing that no claim has been

presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir.

2005).

Our Court of Appeals has often had occasion to explain

the contours of the Supreme Court's decision in Monell v. Dep't

of Social Servs., 436 U.S. 658 (1978), which rejected municipal

respondeat superior liability under § 1983.  As that Court

recently rehearsed,

> [W]hen a suit against a municipality is based
> on § 1983, the municipality can only be
> liable when the alleged constitutional
> transgression implements or executes a
> policy, regulation, or decision officially
> adopted by the governing body or informally
> adopted by custom.

McTernan v. City of York, Pa., 564 F.3d 636, 657 (3d Cir. 2009)

(internal citations omitted) (quoting Beck v. City of Pittsburgh,

89 F.3d 966, 971 (3d Cir. 1996) (citing Monell)).  A "policy"

exists when a "decisionmaker possess[ing] final authority to

establish a municipal policy with respect to the action issues an

13

official proclamation, policy, or edict." <u>Andrews v. City of
Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (alterations in
original) (internal quotation marks omitted).  Alternatively, a
'custom' arises when, "though not authorized by law, such
practices of state officials [are] so permanent and well settled
as to virtually constitute law." <u>Id.</u> (alterations in original)
(internal quotation marks omitted).

     Once a municipal policy or custom has been
established, plaintiff must then "'demonstrate that, through its
<u>deliberate</u> conduct, the municipality was the 'moving force'
behind the injury alleged.'" <u>Bd. of Cnty. Comm'rs of Bryan Cnty.
v. Brown</u>, 520 U.S. 397, 404 (1997) (citations omitted) (emphasis
in original).  And "[i]f . . . the policy or custom does not
facially violate federal law, causation can be established only
by 'demonstrat[ing] that the municipal action was taken with
'deliberate indifference' as to its known or obvious
consequences.  A showing of simple or even heightened negligence
will not suffice'", <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 276
(3d Cir. 2000).

     Municipalities are only subject to § 1983 liability for
three sorts of practices.  First, "'the appropriate officer or
entity promulgates a generally applicable statement of policy and

14

the subsequent act complained of is simply an implementation of that policy.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Brown, 520 U.S. at 417-18 & n.10 (Souter, J., dissenting)). Second, "'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. (quoting Brown). And third, "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id. (internal quotation marks omitted) (quoting Brown and also quoting City of Canton, Ohio v. Harris, 489 U.S. 379, 390 (1989)); see also Berg, 219 F.3d at 276.

To state a claim under the first or second "policy" or "custom" claim categories, a plaintiff must "identify a custom or policy, and specify what exactly that custom or policy was." McTernan, 564 F.3d at 658. Furthermore, a "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." Id. Stated another way, a claim will survive a motion to dismiss only if it "allege[s] conduct by a municipal decisionmaker." Id. Our Court of Appeals has explained that a plaintiff is thus obliged

15

to "plead knowledge of such directives by a municipal

decisionmaker, such as the Mayor or Police Chief."  Id. at 658-

59.

Alternatively, § 1983 jurisprudence fleshes out the

third municipal "inaction" claim category.  The Supreme Court

recently reaffirmed that a failure to train constitutes a "policy

or custom" of inaction under § 1983 only when it "amount[s] to

deliberate indifference to the rights of persons with whom the

[untrained employees] come into contact[,]" Connick v. Thompson,

131 S.Ct. 1350, 1359-60 (2011) (internal quotation marks,

citations, and alterations omitted).  The Court in Connick

expressed skepticism about this type of municipal liability,

noting that "[a] municipality's culpability for a deprivation of

rights is at its most tenuous where a claim turns on a failure to

train."  Id. at 1360.

Justice Thomas's majority opinion rehearsed the

familiar deliberate indifference standard, explaining that it is:

> a stringent standard of fault, requiring
> proof that a municipal actor disregarded a
> known or obvious consequence of his action.
> Thus, when city policymakers are on actual or
> constructive notice that a particular
> omission in their training program causes
> city employees to violate citizens'
> constitutional rights, the city may be deemed
> deliberately indifferent if the policymakers

16

> choose to retain that program.  The city's
> "policy of inaction" in light of notice that
> its program will cause constitutional
> violations is the functional equivalent of a
> decision by the city itself to violate the
> Constitution.

id. (emphasis added) (quotation marks omitted) (citing City of

Canton, 489 U.S. at 395).

The Court further explained that "[a] pattern of

similar constitutional violations by untrained employees is

ordinarily necessary to demonstrate deliberate indifference for

purposes of failure to train[,]" id. (quotation marks omitted),

except for the "narrow range of Canton's hypothesized single-

incident liability," id. at 1361.  To succeed on an allegation of

"single-incident" liability, "the unconstitutional consequences

of failing to train [must] be so patently obvious that a city

could be liable under § 1983 without proof of a pre-existing

pattern of violations[.]"  Id.  It would be hard to overstate the

narrowness of this "rare" liability category.  The Supreme Court

in Connick pointed to the limited scope of its single-incident

liability hypothetical:

> [A] city . . . arms its police force with
> firearms and deploys the armed officers into
> the public to capture fleeing felons without
> training the officers in the constitutional
> limitation on the use of deadly force.  Given
> the known frequency with which police attempt

17

> to arrest fleeing felons and the
> predictability that an officer lacking
> specific tools to handle that situation will
> violate citizens' rights, the Court theorized
> that a city's decision not to train the
> officers about constitutional limits on the
> use of deadly force could reflect the city's
> deliberate indifference to the highly
> predictable consequence, namely, violations
> of constitutional rights.

<u>Id.</u>

Beyond failure to train claims, our Court of Appeals has also embraced a more general municipal inactivity liability theory. <u>See</u> <u>Berg</u>, 219 F.3d at 276; <u>Natale</u>, 318 F.3d at 584-85; <u>A.M. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 583-85 (3d Cir. 2004). <u>Natale</u> explains that:

> a policy or custom may also exist where the
> policymaker has failed to act affirmatively
> at all, [though] the need to take some action
> to control the agents of the government is so
> obvious, and the inadequacy of existing
> practice so likely to result in the violation
> of constitutional rights, that the
> policymaker can reasonably be said to have
> been deliberately indifferent to the need.

318 F.3d at 584 (internal quotation marks omitted) (alterations in original).

In <u>Berg</u>, our Court of Appeals expressly recognized an "inadequate systemic design" claim, and acknowledged a "pattern of violations" and a single-incident basis for establishing

18

deliberate indifference.  Berg's single-incident inadequate system design claim prompted the Court to compare "[t]he [municipality's] failure to provide [any] protective measures and fail safes against [the officer's] mistake" to "a failure to equip law enforcement officers with specific tools to handle recurring situations."  Berg, 219 F.3d at 277 (internal quotation marks omitted).

## 2.  **Application**

Plaintiff's municipal liability claims fail Rule 8's notice pleading requirement under Iqbal and Twombly.  Plaintiff's allegations are conclusory for they "express[] . . . factual inference[s] without stating the underlying facts on which the inference[s] [are] based."  Black's Law Dictionary 329 (9th ed. 2009).  Aside from the single incident of alleged police misconduct, the complaint pleads no other facts necessary to establish a municipal liability claim.

### a.  **Policy or Custom Argument**

For a "policy" or "custom" claim to survive a motion to dismiss, McTernan teaches that in post-Twombly § 1983 pleadings plaintiffs "must identify a custom or policy, and specify what exactly that custom or policy was."  564 F.3d at 658 (affirming

district court's dismissal of complaint because it "g[ave] no notice as to the Defendant[]'s improper conduct, simply alleg[ing] that [plaintiff's] rights were violated due to the City's policy of ignoring First Amendment right[s.]"). In addition, a § 1983 municipal liability claim further requires "plead[ing of] knowledge of . . . [constitutionally violative] directives by a municipal decisionmaker, such as the Mayor or Police Chief." Id. Plaintiff's complaint here fails to include any fact satisfying these criteria.

Plaintiff's summary of his complaint's substance unwittingly betrays these shortcomings: "Defendant City implemented a policy of excessive force and ha[d] their officers carry out that policy." Pl.'s Resp. 5; Pl.'s Compl. ¶ 62. As an initial matter, "excessive force" is a legal conclusion plaintiff slaps across an element of his claim. His description of the policy or custom falls far short of a "specif[ication of] what exactly that custom or policy was," as our Court of Appeals requires. On this ground alone, plaintiff's policy or custom argument must fail.

In addition, plaintiff's repeated personification of the City's actions is equally fatal to this claim. He fails to allege any fact to suggest a municipal decisionmaker's personal

knowledge of the constitutionally violative conduct alleged here.

See, e.g., Pl.'s Compl. ¶¶ 41, 61–65; Pl.'s Resp. 5.  McTernan,

which both parties overlook, obliges us to reject these claims on

this ground as well.  Thus, plaintiff's claim that the City's

policies are "more specifically described" elsewhere in his

complaint collides with the reality of his pleading.

### b.   **Failure to Train**

Plaintiff's failure to train claim also must fail

because he alleges no facts to show deliberate indifference.  He

does not plead any fact to suggest a "pattern of similar

constitutional violations by untrained employees."  Plaintiff

merely refers to "other" aggrieved parties in the most abstract,

conclusory terms.  He notes that the City failed to train

officers in the proper "provision of medical care to _injured_

_suspects_," Pl.'s Compl. ¶ 43 (emphasis added), and handling of

warrants so as to "preserv[e] the constitutionally protected

rights of _individuals_ with whom they come into contact[.]"  Id. ¶

44 (emphasis added); see also id. ¶ 63 ("persons within the

City").  Plaintiff omits any reference from which we could

reasonably conclude that others have suffered from a "pattern of

similar constitutional violations."

Plaintiff also fails to supply any facts to shoehorn his claim into the "rare" and "narrow" category of single-incident liability reserved in City of Canton. To establish deliberate indifference from a single incident, a plaintiff must show that the municipality's failure to train was obviously going to lead to the constitutional violations alleged. In foreclosing plaintiff's municipal liability claim in Connick, the Supreme Court found it "significant" that the "Canton hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." Connick, 131 S.Ct. at 1363 (emphasis added). This "significant" fact is similarly absent from plaintiff's complaint here. No facts have been pled showing that the police had any such knowledge of the line between constitutionally permissible and impermissible force. Indeed, plaintiff's complaint lacks even a threadbare recital of this element. His failure to train claim must also fail.

### c. Municipal Inaction

Plaintiff's municipal inaction claim fails for the same reasons just discussed. The same general, conclusory allegations of "similar violations" populate the inaction claim, see Pl.'s Compl. ¶ 42, and preclude a finding of deliberate indifference on

22

this ground.[5]   In short, Twombly and Iqbal require that a

complaint must do more than call an extant review system

"inadequate" without also supplying specific instances where the

system similarly failed others.

Furthermore, plaintiff has not alleged any facts about

the current review system to satisfy the single-incident

deliberate indifference standard Berg obliges us to apply.

Though Berg arose in the context of a motion for summary

judgment, its reasoning is helpful to us here.  The Court

explained that "[t]he [municipality's] failure to provide [any]

protective measures and fail safes against [the county warrant

clerk's] mistake seems comparable to a failure to equip law

enforcement officers with specific tools to handle recurring

situations."  Berg, 219 F.3d at 277 (internal quotation marks

omitted).  Plaintiff's complaint notably fails to allege any

facts showing that the City's system has no protective measures

in place.  His claim flounders on this basis, as well.

**E.   Next Steps**

In view of these shortcomings, we will afford plaintiff

the opportunity to satisfy Twombly and Iqbal in light of our

---

[5]   In fact, Count III omits reference to the inadequate
review system claim.

canvass here of the pertinent jurisprudence.  <u>See</u>, <u>e.g.</u>, <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 236 (3d Cir. 2008); <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).  We will grant plaintiff leave to file a curative amendment by January 25, 2012 or we will dismiss with prejudice Counts I and III against the City for failure to state a claim.

BY THE COURT:

__\s\Stewart Dalzell